I'm sorry about that. It's okay, it looks just fine. Mr. Krugman, the petitioner in this case against the agency, the Veterans Administration. Can you speak up a little bit? Yes, sir. The proffered reason the agency has provided as for why they terminated Dr. Krugman is not supported by the substantial weight of the evidence in the record. Specifically, Dr. Krugman was terminated in part because of his refusal or unwillingness to perform certain types of examinations. It's Dr. Krugman's contention that had he performed those examinations, he would have been breaking the law. And there has been no evidence presented by the agency in any of the four matters below or in any of the briefs before this court that conclusively establishes that he could lawfully follow those orders. Is it your contention that one of the protected disclosures of Mr. Krugman was that he was not qualified to perform these exams? One of the protected disclosures that my client made was essentially that he was not qualified, but more specifically that he and others had improperly been granted privileges to practice medicine by the VA. That was one of only a few disclosures that he made, which we believe provides the motive necessary for a finding for Dr. Krugman under the Whistleblower Protection Act. The decisions below are very inconsistent on the issue of motive. The administrative judge in his first order finds that there was evidence that the disclosures were a contributing factor. Then it goes up to the MSPB on June 12th, and they send it back down, saying that the judge below had not sufficiently considered a great deal of evidence relating to motive. He holds no new hearing. He accepts written submissions only. He hears no new testimony. The only new documents he gets are documents that show motive. Following that concludes he changes his ruling from it was a contributing factor to there was no evidence of motive. He does so without any explanation. Now, as the court has held, in fact, in the previous argument as this court was discussing, where the court below or the judge below fails to explain or fails to provide any reasoning or logic behind their findings, this court cannot properly review that finding. And that's something as critical as motive under the Whistleblower Protection Act. We believe that the judge below erred and committed an abuse of discretion by not laying out his findings. I thought part of the findings was that no VA official or that Texas Valley Medical Facility itself was negatively impacted or criticized in light of the various disclosures that Dr. Krugman made. I think that Your Honor is correct, and the judge below did find that the two individuals who proposed and decided on the termination of Dr. Krugman, they had not had their jobs affected. But I believe to suggest that the types of disclosures that were made here, which resulted in the Office of Special Counsel contacting Secretary Shinseki at the time, which resulted in Shinseki ordering the VA to examine itself, and that examination resulted in six specific findings, including that the entire VA authority in Valley be subjected to an ethics and professionalism exam. And also in particular, the nature of the initial disclosures was that this gigantic new building, this ambulatory service center, which had been built under the leadership of Dr. Aguilar and Dr. Milligan, the two would-be deciding officials here, that essentially Dr. Krugman tore it apart. He came in and in his first week said, the surgery rooms are not sterile. He came in and said, the surgeons you've hired appear to be unqualified. He said, the HVAC system, which is being used to supply air to the offices upstairs and the sick people downstairs, is also being used for the surgery rooms. He said, you're going to have to make $5 million to $10 million worth of changes to this center for it to be usable. And to suggest that these two men who helped build this building and who would be responsible for its oversight would not be affected by these kinds of disclosures, I think defies logic and the human experience. The allegations in this case are very similar in their nature to those in Whitmore. They go to the heart of the agency's responsibility. These aren't disclosures about pens costing too much or people not punching their time cards. These were disclosures that says the VA is not protecting its veterans. The VA is not providing adequate medical care. Those kinds of disclosures that go to the heart of the agency's mission, that find their way in two different letters from the special counsel to the president of the state. I don't think it's in dispute here that Mr. Krugman's disclosures were protected disclosures. I do not believe there's a dispute they were protected disclosures. It's not in dispute? I do not believe it's in dispute. So maybe you should address how they decided against your client. Excuse me. The next question is, just in a general sense, would they have fired Mr. Krugman anyway, but for his protected disclosures, or would they have had fired someone in a similar situation for the same disclosures? We submit a two-part argument to that question. One part is we don't know if they could have or would have dismissed him from his position. They present evidence that they would have. You and I may not be able to guess, but we do have evidence in the record that they would have fired him, even if we didn't have a whistleblower situation. Isn't there that just following up on that PSB board, I guess? They said that he was not qualified for the position, even though they knew nothing about his whistleblower activity? One of the intricacies and complications of this case is what was the position. He was brought in to be an associate chief of staff, having not seen a patient in 10 years. He had no ability to practice medicine, and he was being put into this position where there are many duties that involve patient care. So the record reflects a sort of tacit understanding that he would either not be required to perform those roles or that he would be given sufficient time to move into them. I thought the record reflected that he was given an application for the C&P exams at the time of hiring, which he filled out. And the record reflects that he did do some online training or something like that? Yes. And then the record reflects that he, for whatever reason, took his time before he got around to doing the actual in-person training to get him ready for those C&P exams. The in-person training was supposed to be provided by Alan Dysonman, and there's a very important letter that he wrote that appears on the Joint Appendix 276. He is the service chief of compensation and pension exams. He's the guy in charge of this. He's the person who was supposed to provide Dr. Krugman with the training and said he would not be able to do it until May at the earliest. Krugman gets sent up to the PSB in June, clearly having been given no opportunity to even qualify for the credentials he's allegedly not using in the service of the VA. When was that person's letter? That person's letter was earlier on, and when I come back up here I'll have that date for you. Okay, I'm just trying to figure out, was that like August or September of the prior year? It was during the period of time in which Dr. Krugman was attempting to get privileges for P&C. But the letter doesn't speak so much about Dr. Krugman. It more generally indicates that obtaining these kinds of privileges is a massive undertaking, that for a seasoned physician it could take up to a year, and that no one should expect to be able to bring in a new physician and start getting privileges for P&C right away, and he's the guy who would know. He told this to Dr. Aguilar very clearly. Dr. Aguilar brings Dr. Krugman up to the PSB in June before he's had any real chance to qualify for these privileges or even try and use them. It's for that reason that we believe that the orders that he performed those exams, the orders that he did the other types of exams were illegal, and without a showing by clear and convincing evidence from the agency that he could lawfully perform those orders, there can be no basis for justifying his termination. If there are no questions, I will sit and go. Thank you. Ms. Onyema? Onyema, yes. Onyema. May it please the Court. The Board properly applied the CAR factors when it determined that the VA proved by clear and convincing evidence that it would have removed Dr. Krugman absent his protected disclosures. The Board considered pertinent evidence, including conflicting evidence provided by Dr. Krugman, and also weighed in-person live testimony, making credibility determinations as to the scope of his duties. Notably, the Board considered testimony from Dr. Aguilar, who noted that Dr. Krugman was expected to manage patient care and manage the supervised staff, and also that he would be expected to engage into signing off on fee basis consults. The Board considered testimony from Dr. Krugman as well, who stated that he had different duties related to activating the ambulatory center and that he would not need to interact with patients. And in weighing that evidence, the Board found that the testimony of Dr. Krugman was not reliable. For example, Dr. Krugman stated that he was unqualified for the position. However, after his resume was reviewed before the Board, he then changed his story and indicated that he was qualified for the position. And in regards to the VA's investigation into the whistleblower allegations, Dr. Krugman did specifically challenge the circumstances surrounding his hiring. I think when he signed on with the VA, he signed some form of acknowledgement that he was qualified. But when you look at his record, it had been 20 years since he had examined anybody. Well, Your Honor, he had an active medical license. And in terms of the compensation and pension. But not in Texas. I mean, not in Texas. He did not have a Texas license. However, under 38 U.S.C. 7402, VA physicians need to have an unrestricted medical license. It doesn't need to be issued in Texas. But in regards to the compensation and pension exams, the VA actually investigated the allegation that he was not qualified for holding these privileges by noting that there's no prohibition in VA Handbook 1119, which is referenced on page 210 of the record. There's no prohibition that states a physician cannot obtain privileges in an area outside of their specialty. And the VA found that. So a doctor doesn't have to be qualified or competent in a particular field in order to handle the compensation and pension exams? Correct, Your Honor. They can demonstrate comparable competency, which is explained in the privilege delineation process and referenced on page 210. Maybe the answer is maybe a particular doctor doesn't need to have an expertise in a particular area, but they, at a minimum, have to be a competent doctor in order to perform any kind of physical examination on someone. That's correct, Your Honor. And the VA, in investigating the whistleblower allegations, noted that compensation and pension exams require the physician to meet with the patient, intake historical information, conduct an examination, but then it's a diagnostic tool that's used to assess a disability level. The doctor's not providing treatment or prescribing medication. And the VA noted in its finding that the claim was unsubstantiated that any sort of bridging the gap in terms of level of experience could be done through training. And as long as the physician had submitted his application to the PSB and it was approved and showed a level of comparable competence, that was enough to demonstrate that they could perform the compensation and pension. So you're opposing counsel's making the argument that Dr. Crookman was not qualified to do these kinds of examinations because his license was not in Texas. And so, therefore, he all along told everybody, I guess Dr. Aguilar, that he really can't be doing these examinations because he's not allowed to under the law. Well, in terms of the examinations, and this is limited just to the compensation and pension and not to the fee-based consultations that I can discuss in a moment, but in regards to the compensation and pension exams, Dr. Crookman did apparently indicate to Dr. Aguilar that he did not want to be performing these examinations. This was after he had already received his privileges. He received his privileges in October of 2010 through a different facility. And when it was time to reapply for those privileges because that facility was going to be terminating all privileges for doctors that didn't practice there, he then stated that he did not want to perform them. He had privileges to do C&P examinations at another facility when he was hired? Your Honor, he obtained those privileges for purposes of this job. But because the Harlingen facility was brand new and was not yet up and running, he was required to get the privileges at another VA facility. So he obtained those in 2010. He engaged in training to obtain them. And when he was appointed by the PSB, the appointment was effective in January. I think it's noted on page 318 of the record. The PSB noted that he did have those privileges and that he would be able to perform compensation and pension exams provided that he was at a VA facility. And when he applied to get those privileges essentially recredentialed in March and the PSB approved those in April, the PSB noted that he would need to undergo additional training because he had not performed any compensation and pension exams in the last 12 months. And that ended up being an issue that came up before the PSB. So in terms of the charging document as to the conduct charges against Dr. Krugman, three of the four related only to fee-basis consults. However, by the time the case arrived to the PSB, there apparently was an indication that he did not want to perform the compensation and pension exams, and that was also discussed at that hearing. However, the majority of the hearing was used to discuss his failure to perform the fee-basis consultations, despite the fact that there were witnesses who testified that he had received training for it and said he felt comfortable performing those examinations. However, he was not performing them in a timely fashion, which was impacting morale, and also in a couple of instances could potentially endanger patients who needed to know if they could receive care outside of the VA. If I could briefly touch on the second car factor, which is the strength and existence and strength of a retaliatory motive. I want to just make very clear, and I know we discussed this in our brief, this case is very distinguishable from Whitmore. In Whitmore, there was evidence that the responsible officials were actively monitoring the disclosures that the whistleblower was making and that they had expressed high concerns of that. And after the board remanded this case back to the administrative judge, the administrative judge found no evidence that that was the case here. He also determined that while the deciding official had been relocated to a different facility, he was relocated to a facility with more responsibility. So to suggest that, the fact that there was essentially the evidence demonstrated that there was no significant retaliatory motive, and so that is why Whitmore is distinguishable. If the court has no further questions, we rest on our brief. Thank you very much. A compensation and pension exam is an examination performed by a VA physician that determines what level of compensation or disability payments a veteran will receive for the remainder of his or her life. It is an important obligation. It is an important duty, and it absolutely involves the practice of medicine. It involves reviewing patient history. It involves examining, often physically examining the patient and making a determination about the level of their illness or injury. It's not simply a question of whether or not Dr. Krugman wanted to perform C&P exams. He did not feel that he was qualified or even credentialed to do it. Why did he indicate on a notice that he signed that he was qualified for these exams? There were a lot of things that he signed at the outset of his employment during this period of time where him and Aguilar were trying to sort of carve out a position for him where he could oversee this ambulatory unit while not actually performing as a doctor because they both knew that he couldn't perform as a doctor. There was ample testimony. Why did he sign the form then? In this case, he signed the form to get privileges because he knew it would be in a jurisdiction where he would not be practicing. He was not concerned about getting privileges at a place where he would not be required to perform any kind of medical exam. The reason he was asked to get those privileges was to justify his salary. I think the fact that he got those privileges so easily from the other district in Texas just goes to show what kind of problem we're dealing with here that Dr. Krugman exposed. He had not had sufficient training. I'm confused. He got privileges at another facility. Yes. Another facility in Texas? He got privileges in South Texas where he was not working and needed to get them in Valley Coastal. So he was essentially barred in one state but not in another. It's not the same state? It is the same state but it's equivalent to having a license to practice in one area and not in a different area. He never had authority to actually perform these exams in the area where he actually worked, Valley Coastal. The P&C exams that they would have assigned to him would have required him to perform the exams without credentials and without privileges. But again to the point of how easily he got the credentials from South Texas without any sort of demonstration of his abilities or qualifications just goes to show what the problem was that he was addressing here. The idea that these are simple exams, I would direct the court's attention to Joint Appendix page 279 which is the actual application. This is the closest thing we have to the law of when a practitioner can perform these types of exams or not because the requirements are laid out on the form itself. And there are several areas where Dr. Krugman clearly does not meet the requirements, most notably in experience and in training which he had not yet finished with. He's so lost. He wants to get back to a job he's not qualified to do? He's being told that if he doesn't get these privileges he's going to get fired. So he's doing whatever he can to make himself qualified. One of the things he felt he needed to do was to not just take a quick PowerPoint presentation course but to actually study with Dr. Dineman and do rotations with him and see patients which he again hadn't done in 10 years. He felt he needed to have some hands-on training, sustained hands-on training which is exactly what Dr. Aguilar agreed to as well. That process was ongoing at the time when Dr. Aguilar decided to move for his termination. What about the fee basis consults that for some reason kept lingering on his desk? He was concerned also about his qualifications to perform fee-based consults. Ultimately with enough training he found that he could do them but his experience was that he was simply a conduit. The fee-based consult would come to him and if it was dealing with a cardiac patient he would walk it over to the head of cardiology who would then do all the analysis and then he would bring it back, stamp it, and move it along. He felt that that was not a good use of his time. Is there any evidence in the record as to how quickly other doctors met their requirements to the consultation requirements? Is there any evidence, for example, that overall in the VA there's an extraordinary large amount of time in providing these types of examinations? The best evidence and I believe the only evidence in the record is the letter from Dr. Dineman which was on December 30, 2010. In that letter he cites to an OIG investigation in which the OIG is admonishing the VA that they should expect for it to take a year for a qualified practicing medical professional to be able to obtain these privileges. During this time though while he's being asked to train, is he being asked to do the consultations? He's being asked to do fee-based consults. The fee-based. My time has expired but if I could simply wrap up this way. Please wrap up. The agency makes the case that he was fired because he was essentially unqualified. If he was unqualified at month nine, he was equally unqualified on day one and it was known to everybody who hired him. There's a clear disconnect between an agency that hires somebody with known limitations and then fires somebody with known limitations nine months later. There had to have been an intervening act. We suggest the intervening act with no disclosures. Thank you, Your Honor. Thank you. We thank all the parties for their arguments today. This court now stands in recess. All rise. The Honorable Court is adjourned from day to day.